# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**JOSEPH DUNBAR,**

     **Plaintiff,**

**v.**                                                          **Case No: 5:25-cv-457-WFJ-PRL**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

_____

### ORDER

Plaintiff Joseph Dunbar ("Plaintiff" or "Dunbar"), who is proceeding *pro se*, filed this action against the Commissioner of Social Security (the "Commissioner"), alleging that the Social Security Administration ("SSA") has failed to pay Plaintiff's benefits after an Administrative Law Judge ("ALJ") issued a partially favorable decision, in which the ALJ found that Plaintiff was disabled beginning on January 1, 2023, but not before that date. (Doc. 1). Plaintiff seeks to proceed in forma pauperis. (Doc. 2). For the reasons explained below, Plaintiff's Motion to Proceed in Forma Pauperis is taken under advisement, and in an abundance of caution, Plaintiff will be given an opportunity to amend the complaint.

## I.    BACKGROUND

Dunbar filed an application for supplemental security income ("SSI") disability benefits on July 26, 2018. (Doc. 1 at pp. 5, 7). The ALJ issued a decision on Dunbar's SSI claim on December 19, 2022, and Dunbar subsequently requested review of that decision by the Appeals Council. (*Id*. at p. 14).[1] On June 28, 2023, the Appeals Council granted Dunbar's request, vacating the ALJ's decision and remanding Dunbar's case to the ALJ for resolution of the following issue:

> Subsequent to the hearing, on November 30, 2022, the Administrative Law Judge obtained 98 pages of evidence from Cardiology Partners dated May 19, 2021 to August 11, 2022 (Exhibit 27F). While the decision indicates this evidence was submitted by the claimant (Decision, page 1), the provider invoice (Not an exhibit), received into the electronic file on November 30, 2022, suggests otherwise. The Administrative Law Judge admitted the evidence into the record, but there is no indication that this evidence was proffered to the unrepresented claimant. Proffering evidence allows a claimant to comment on, object to, or refute the evidence by submitting other evidence (HALLEX[2] 1-2-7-1 A). Pursuant to HALLEX 1-2-7-1 B, the Administrative Law Judge will proffer all post-hearing evidence unless the claimant or the appointed representative submitted it, the claimant knowingly waived the right to examine the evidence, or the decision is fully favorable to the claimant. None of these exceptions apply in this case.

(*Id*.). The Appeals Council's order instructed the ALJ to offer Dunbar "an opportunity for a hearing, address the evidence which was submitted with [Dunbar's] request for review, take

---

[1] Plaintiff does not indicate what the outcomes were at the initial determination or reconsideration stages regarding his claim for SSI.

[2] "HALLEX" is the Hearing, Appeals and Litigation Law Manual. It "provides guiding principles, procedural guidance and information to ALJs and staff at the Administration." *See McMurtry v. Astrue*, 749 F. Supp. 2d 875, 880 (E.D. Wis. 2010) (citing *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) and *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000)) (internal quotation marks omitted).

any further action needed to complete the administrative record[,] and issue a new decision." (*Id.* at p. 15).[3]

Following the Appeals Council remand order, the ALJ issued a partially favorable decision on March 22, 2024, finding that Dunbar was disabled beginning on January 1, 2023, but not before then. (*Id.* at pp. 6-7).[4]  In that decision, the ALJ indicated that although Dunbar became disabled as of January 1, 2023, he advised Dunbar that "[a]nother office [within the SSA] will process [his] decision and decide if [he] meet[s] the non-disability requirements for [SSI] payments." (*Id.* at p. 6). The ALJ further advised Dunbar that "[t]he component of the [SSA] responsible for authorizing supplemental security income will advise [Dunbar] regarding the non-disability requirements for these payments, and if eligible, the amount and the months for which payment will be made." (*Id.* at p. 7). The ALJ's decision further explained that if Dunbar disagreed with the decision, he could file an appeal with the Appeals Council. (*Id.* at p. 6). Dunbar does not allege that he sought review of the ALJ's partially favorable decision by the Appeals Council. (*See generally id.*).

Dunbar initiated this action against the Commissioner on July 21, 2025, approximately 16 months after the ALJ issued the partially favorable decision, asserting that the SSA has failed to pay his benefits resulting from the ALJ's decision. (*Id.* at pp. 2-3). In the complaint, Plaintiff alleges that the SSA has "targeted him through a pattern of intentional misconduct, delays[,] and denial of due process, despite . . . repeated notices and demands." (*Id.* at p. 2). According to Plaintiff, he has been unsuccessful in his attempts to contact the

---

[3] The Appeals Council also found no evidence supporting Dunbar's allegation that the ALJ "targeted" him "by not giving him equal protection." (*Id.*).
[4] The Court notes that Plaintiff only included two pages from the ALJ's decision issued on March 22, 2024, and not the entire decision with his complaint. (*See id.*).

SSA concerning his case, as the SSA has failed to "respond to [his] formal demands or inquiries for over 15 months." (*Id.* at p. 3). As a result of these alleged violations, Plaintiff asserts claims under the Mandamus Act, 28 U.S.C. § 1361; the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); *Bivens*;[5] and alleges that his due process rights under the Fifth Amendment had been violated by the SSA's refusal to pay his benefits. (*Id.* at pp. 3-4). He asserts that the Court has jurisdiction over his claims pursuant to 42 U.S.C. § 405(g) of the Social Security Act; 28 U.S.C. § 1361 (mandamus); 28 U.S.C. § 1331 (federal question); 5 U.S.C. § 702 (Administrative Procedures Act); 28 U.S.C. § 1346(b) (FTCA); and the Fifth Amendment of the United States Constitution. (*Id.* at p. 1).

Notably, while this action was pending, the SSA sent Dunbar a letter dated July 28, 2025, informing him that even though the ALJ found that he met the medical requirements as of January 1, 2023 to receive SSI, he was ineligible for SSI benefits because he did not meet the non-medical eligibility requirements. (Doc. 5 at p. 5). Specifically, the SSA determined that Dunbar and his spouse had resources in excess of the $3,000 limit from multiple properties located at 22024 NW 242nd Street, Okeechobee, Florida; 21972 NW 242nd Street, Okeechobee, Florida; and 242nd Street, Okeechobee, Florida, totaling $28,125.00. (*Id.*). The letter provided Dunbar with the SSA's basic rules for determining SSI eligibility, advising him that "[t]o be eligible for SSI, [the SSA] must determine that [he is] at least age 65, or that [he is] blind or disabled according to [its] rules. [He] must also meet certain requirements for . . . resources, and . . . [i]f [his] . . . resources are over the allowable limit, [he] cannot receive

---

[5] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

SSI." (*Id.*). The SSA advised Dunbar that if he disagreed with its decision, he should ask for an appeal within 60 days. (*Id.* at p. 6).

## II.    LEGAL STANDARDS

An individual may be allowed to proceed in forma pauperis if he declares in an affidavit that he is unable to pay such fees or give security therefor. *See* 28 U.S.C. § 1915(a)(1). However, before a plaintiff is permitted to proceed in forma pauperis, the Court is obligated to review the complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See id.* § 1915(e)(2). If the complaint is deficient, the Court is required to dismiss the suit *sua sponte*. *See id.*

In evaluating a complaint under § 1915, courts must liberally construe *pro se* filings and hold them to less stringent standards than papers drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts cannot act as counsel for plaintiffs or rewrite pleadings. *See United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021). *Pro se* litigants must still comply with the procedural rules applicable to ordinary civil litigation. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

Nevertheless, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See id.* (quoting

*Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *See Twombly*, 550 U.S. at 555 (citations omitted). Although a court must accept as true well-pleaded allegations, it is not bound to accept a legal conclusion stated as a "factual allegation" in the complaint. *See id.*; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations omitted); *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) (per curiam) (stating that the court "afford[s] no presumption of truth to legal conclusion and recitations of the basic elements of a cause of action") (citations omitted).

Subject-matter jurisdiction is a threshold issue in any case pending in the United States District Court. Federal courts are courts of limited jurisdiction, which are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *See Univ. of So. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "[A] court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001); *see Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). This inquiry should be done at the earliest stage in the proceedings

and *sua sponte* whenever subject matter jurisdiction may be lacking. *See Univ. of So. Ala.*, 168 F.3d at 410; *Fitzgerald*, 760 F.2d at 1251. If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. P. 12(h)(3); *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1261 (11th Cir. 2000) ("[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction.").

## III.  DISCUSSION

The thrust of Plaintiff's complaint, which was filed before the SSA's decision to deny his claim for SSI disability benefits based on its finding that he did not meet the non-medical eligibility requirements, seems to be that he believes he is being wrongfully denied Social Security benefits from the SSA to which he is entitled and contends that his due process rights have been violated as a result. (*See generally* Doc. 1). Plaintiff's allegations suggest that the SSA has refused to pay Plaintiff's benefits by "target[ing] him through a pattern of intentional misconduct" and "delays." (*Id.* at p. 2). He asserts that the Court derives subject-matter jurisdiction over his claims pursuant to 42 U.S.C. § 405(g), 28 U.S.C. § 1361, 28 U.S.C. § 1331, 5 U.S.C. § 702, 28 U.S.C. § 1346(b), and the Fifth Amendment of the United States Constitution. (*Id.* at p. 1).

### A.  Jurisdiction

At the outset, Plaintiff has not established that this Court has jurisdiction over his claims. Under 42 U.S.C. § 1383(c)(3), the Commissioner's decisions regarding SSI are "subject to judicial review as provided in section 405" of the Social Security Act. *See* 42 U.S.C. § 1383(c)(3) (providing for judicial review of the Commissioner's final determination of an individual's eligibility for SSI benefits in the same manner as provided in 42 U.S.C. § 405(g)).

In particular, § 405(g) provides federal district courts jurisdiction to review only "final decision[s] of the Commissioner of Social Security made after a hearing." *See* 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108 (1977) (recognizing that § 405 "clearly limits judicial review" to final agency decisions made after a hearing). Under § 405(g), a claimant must satisfy two jurisdictional requirements to obtain judicial review of an agency decision. First, the claimant must have presented a claim for benefits to the SSA. *See Mathews v. Eldridge*, 424 U.S. 319, 328-29 (1976). Second, absent a waiver, the claimant must have exhausted his administrative remedies. *See Crayton v. Callahan*, 120 F.3d 1217, 1220 (11th Cir. 1997). This exhaustion requirement is generally required to prevent "premature interference with agency process," to allow the agency to function efficiently, and "correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *See Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *McKart v. United States*, 395 U.S. 185, 194 (1969) (explaining that "since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise"); *L.N.P. v. Kijakazi*, 64 F.4th 577, 584 (4th Cir. 2023) (observing that the exhaustion requirement is "designed to let [the] SSA process claims in accordance with its complex procedure and [to] apply its expertise before authorizing judicial review").

Section 405 further provides that "[n]o findings of fact or decision of the [agency] shall be reviewed" except as provided in § 405(g). *See* 42 U.S.C. § 405(h). Section 405(h) "make[s] exclusive the judicial review method set forth in § 405(g) . . . in a typical Social Security . . . benefits case, where an individual seeks a monetary benefit from the agency [such as] a disability payment[.]" *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000);

*Chambers v. Kijakazi*, 86 F.4th 1102, 1106 (5th Cir. 2023) (noting that § 405(h) has been viewed as serving "a channeling function, by stripping district courts of the most obvious sources of federal jurisdiction and then making exclusive the judicial review method set forth in § 405(g), which, in turn, grants jurisdiction to district courts to review *final* agency decisions[.]") (internal quotation marks omitted) (emphasis in original). This section also provides that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under [28 U.S.C. § 1331 or § 1346] to recover on any claim arising under [the Social Security Act]." *See* 42 U.S.C. § 405(h). Thus, taken as a whole, § 405(h) has been found to "preclude[] independent jurisdictional basis of any claim other than that provided by [§] 405(g)." *See Taylor v. Astrue*, No. C-07-05549 EDL, 2008 WL 3823718, at *1 (N.D. Cal. Aug. 13, 2008) (citations and internal footnote omitted).

Furthermore, the Social Security Act "does not define 'final decision,' instead leaving it to the [agency] to give meaning to that term through regulations." *See Sims v. Apfel*, 530 U.S. 103, 106 (2000). The regulations, in turn, provide that the agency will have made a final decision only after a claimant has completed the following four-step administrative review process: (1) initial determination, (2) reconsideration, (3) a hearing before an ALJ, and (4) a request for review by the Appeals Council. *See* 20 C.F.R. § 416.1400(a); *Parker v. Comm'r, SSA*, No. 22-3171, 2023 WL 3300902, at *1 (10th Cir. May 8, 2023), *cert. denied*, 144 S. Ct. 146 (2023) ("A decision is considered *final* only if the claimant has requested review by the Appeals Council.") (citing 20 C.F.R.§ 416.1400(a)(4)) (emphasis in original); *see also Taylor*, 2008 WL 3823718, at *4 (stating that "after the ALJ issues a decision on remand, [p]laintiff can again appeal the decision to the Appeals Council . . . [and] [o]nce the Appeals Council issues a final decision, [p]laintiff could [then] appeal it to the district court").

As such, a claimant must complete the administrative review process and thereby

exhaust his administrative remedies for the Court to obtain jurisdiction over the case, unless

exhaustion is waived.[6] *See Sims*, 530 U.S. at 107 ("In administrative-law parlance, such a

claimant may not obtain judicial review because he has failed to exhaust his administrative

remedies."); *Berryhill*, 587 U.S. at 475-76 (explaining that claimants must exhaust remedies

before the Commissioner before federal courts may review a claim); *Mathews*, 424 U.S. at 327-

30 (interpreting 42 U.S.C. § 405(g) to require that administrative procedures be exhausted

before judicial review of an individual's claim for Social Security benefits becomes available);

*see also Shalala*, 529 U.S. at 15 (recognizing the Social Security Act's "nonwaivable and

---

[6] There are exceptions to the exhaustion requirement, including (1) a waiver by the SSA, and (2) an excusal by a court. *See Smith v. Berryhill*, 587 U.S. 471, 478 (2019) (citation omitted). A waiver by the SSA may occur when the SSA does not properly raise the exhaustion issue in a judicial proceeding. *See Wolf v. Comm'r of Soc. Sec.*, No. 8:13-cv-3222-T-23PDB, 2015 WL 6750903, at *2 (M.D. Fla. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 6736771 (M.D. Fla. Nov. 4, 2015) (citing *Heckler v. Day*, 467 U.S. 104, 110 n.14 (1984); *Weinberger*, 422 U.S. at 766-67); *see also Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (indicating that the Commissioner has discretion to decide whether the exhaustion requirement should be waived). A court's excusal of the exhaustion requirement involves a three-pronged inquiry: (1) whether plaintiff states a colorable constitutional claim that is collateral to his substantive claim of entitlement to social security benefits, (2) whether enforcing the exhaustion requirement would cause irreparable injury, or (3) whether exhaustion would be futile. *See Comack v. Comm'r, Soc. Sec. Admin.*, No. 23-11115, 2024 WL 4719238, at *2 (11th Cir. Nov. 8, 2024) (per curiam) (citing *Crayton*, 120 F.3d at 1222); *see also Mathews*, 424 U.S. at 330-32; *Kilmowicz v. Comm'r of Soc. Sec.*, No. 8:23-cv-2261-SPF, 2024 WL 1603996, at *3 (M.D. Fla. Feb. 8, 2024).

Here, Plaintiff does not provide any basis for the Court to conclude that the exhaustion requirement has been waived by the SSA. Further, he fails to show that exhaustion would be futile or cause an irreparably injury, and since Plaintiff's claims stem directly from his claim for benefits, he fails to raise a colorable constitutional claim or present an issue entirely collateral to his claim for benefits. *See Comack*, 2024 WL 4719238, at *3 ("Unlike *Mathews*, where the claimant alleged the termination of his benefits without a hearing violated his due process rights, Comack's allegations specifically involve the behavior of the Miami Office, and the wage information considered by the two [ALJ's], all of which falls within the SSA's agency authority.") (citing *Mathews*, 424 U.S. at 324-25). Plaintiff does not claim that a specific agency-wide policy has led to the alleged delay of the adjudication of his claim, nor does he allege that the agency failed to follow applicable regulations, which would otherwise be deemed colorable claim to his claim for benefits. *See Bowen*, 476 U.S. at 483. Instead, Plaintiff generally argues that the "SSA's refusal to process . . . [the] ALJ['s] ruling and its years-long delay in resolving Plaintiff's claim constitute a denial of due process." (Doc. 1 at p. 3).

nonexcusable requirement" that a claimant exhaust his administrative remedies "before raising [his claim] in court"). A claimant who fails to take any of those steps within the time prescribed therefore "lose[s] [his] right to further administrative review and [his] right to judicial review." *See* 20 C.F.R. § 416.1400(b).

In this case, Plaintiff has failed to allege that he exhausted his available administrative remedies as required by § 405(g). The challenge Plaintiff raises in his complaint is with regard to the SSA's alleged failure to pay Plaintiff's SSI benefits based on the ALJ's partially favorable decision finding that Plaintiff met the medical requirements as of January 1, 2023 to receive SSI—a decision made before the SSA determined that Plaintiff was ineligible for SSI benefits because he did not meet the non-medical eligibility requirements. Nevertheless, Plaintiff does not allege that he sought administrative review of the ALJ's decision (or even the SSA's subsequent decision denying his application for SSI benefits) before filing his complaint in this Court. Even though Plaintiff is proceeding *pro se*, Plaintiff's "status as a pro se plaintiff does not exempt him from the requirement of exhaustion of his administrative remedies prior to the opportunity for judicial review." *See Smith v. Soc. Sec. Admin.*, 54 F. Supp. 2d 451, 454 (E.D. Pa. 1999). Because Plaintiff fails to allege that he exhausted his administrative remedies, "there is no final [agency] decision and, as a result, no judicial review." *See Sims*, 530 U.S. at 107; *Parker v. Comm'r, SSA*, F. App'x 786, 789 (10th Cir. Mar. 22, 2021) ("The law is clear. A decision of the Commissioner is not final for jurisdictional purposes unless the claimant first exhausts his administrative remedies by, as pertinent here, seeking Appeals Council review."). Therefore, even assuming Plaintiff's claims are being brought pursuant to § 405(g), it does not provide the Court with jurisdiction under the circumstances presented here.

Furthermore, Plaintiff does not establish any other basis for the Court to exercise jurisdiction over this action. Plaintiff contends that the Court can exercise jurisdiction over his claims pursuant to 28 U.S.C. § 1361, such that he "is entitled to a writ of mandamus compelling such action." (Doc. 1 at pp. 1, 3). Federal district courts have original jurisdiction over a mandamus action and can issue writs of "mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy which should be utilized only in the clearest and compelling of cases." *See Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (per curiam).[7] For a court to have mandamus jurisdiction, the plaintiff must (1) have exhausted all other avenues of relief, and (2) demonstrate that the defendant owes him a clear nondiscretionary duty. *See id.* (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). As discussed above, Plaintiff has not shown that he has exhausted all other available avenues of relief prior to filing this instant action. Nor has he adequately demonstrated that the Commissioner owed him a clear nondiscretionary duty. Thus, based on the present factual allegations, the Court does not have mandamus jurisdiction over this action under 28 U.S.C. § 1361.

Plaintiff further contends that the Court retains jurisdiction over his claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), the Fifth Amendment, 28 U.S.C. § 1346(b) (FTCA),[8] and 5 U.S.C. § 702 (Administrative Procedures Act). Given the clear language of §

---

[7] Mandamus relief is only available "when (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *See id.* at 1258; *see also Lifestar Ambulance Service v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004).

[8] The FTCA provides district courts with original jurisdiction over civil actions "against the United States[] for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment with the United States[.]" *See* 28 U.S.C. § 1346(b)(1). "'The FTCA is a specific, congressional exception' to the United States' sovereign immunity for tort claims, under which the government may 'be sued by certain parties under certain circumstances for particular

405(h), federal question jurisdiction is not available in this case. *See* 42 U.S.C. § 405(h).

Similarly, Plaintiff's asserted due process claim under the Fifth Amendment does not provide

for a grant of jurisdiction, as § 405(g) "provides the sole express jurisdictional basis for judicial

review" of such claims. *See Taylor*, 2008 WL 3823718, at *2 (indicating that plaintiff's due

process claim relating to his entitlement to SSI benefits "fall within the category of cases for

which [§] 405(g) provides the sole express jurisdictional basis for judicial review.") (citing

*Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir. 1992)). Likewise, § 405(h) precludes the Plaintiff

from utilizing the FTCA to bring a lawsuit against the Commissioner in connection with any

claim arising under the Social Security Act.[9] *See* 42 U.S.C. § 405(h); *Raczkowski v. United

States*, 138 F. App'x 174, 175 (11th Cir. 2005) (per curiam) ("We conclude that because [the

plaintiff's] claim is one arising under the [Social Security] Act, § 405(h) bars him from

asserting jurisdiction under the FTCA[.]"); *Williams v. Comm'r of Soc. Sec.*, No. 8:20-cv-3096-

T-CEH-AAS, 2021 WL 1165593, at *3 (M.D. Fla. Mar. 8, 2021) (determining that the court

lacks jurisdiction over FTCA claims for damages when a plaintiff's claim arises under the

Social Security Act), *report and recommendation adopted*, 2021 WL 1165224 (M.D. Fla. Mar.

26, 2021) (citing *Shalala*, 529 U.S. at 10). In a similar vein, the Administrative Procedures Act

---

tortious acts committed by employees of the government.'" *Turner ex rel. Turner v. United States*, 514
F.3d 1194, 1200 (11th Cir. 2008) (quoting *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir.
1994)). "The FTCA does not create a substantive cause of action against the United States, but
provides a mechanism by which a plaintiff may bring a state law tort action against the federal
government in federal court." *Young v. United States*, No. 618CV877ORL37KRS, 2018 WL 3150260,
at *2 (M.D. Fla. June 12, 2018) (citing *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004)
(per curiam)), *report and recommendation adopted*, 2018 WL 3140154 (M.D. Fla. June 27, 2018).
  [9] Even if the Court had jurisdiction over Plaintiff's FTCA claim (notwithstanding the
numerous exceptions and limitations to bringing a lawsuit under the FTCA) and found that Plaintiff
exhausted his administrative remedies under the FTCA, Plaintiff has failed to identify a recognized
negligence claim under Florida state law that is required to seek redress for an FTCA claim. *See
Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001).

does not provide an independent basis for subject-matter jurisdiction, permitting judicial review of agency action. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977) (holding that the Administrative Procedures Act "does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action").

As a final matter, Plaintiff attempts to bring a *Bivens* claim "for [c]onstitutional [v]iolations by [f]ederal [o]fficials." (Doc. 1 at p. 4). The Supreme Court has explained that in *Bivens*, "there exists an implied private right of action for damages against federal officers for violating a citizen's constitutional rights." *See Taylor v. Pekerol*, 760 F. App'x 647, 652 (11th Cir. 2019) (per curiam) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)); *Bivens*, 403 U.S. at 397. Indeed, *Bivens* only permits claims to be brought against federal officers in their individual capacities[,]" and "does not extend to allow causes of action against federal agencies." *See Nails v Coleman Low Fed. Inst.*, 307 F. App'x 296, 297-98 (11th Cir. 2009) (per curiam) (citations omitted). In this instance, Plaintiff is suing the Commissioner and not any federal officers acting in their individual capacities. Therefore, Plaintiff cannot assert a *Bivens* claim.

### B.  Amendment

In an abundance of caution, the Court will provide the Plaintiff with an opportunity to file an amended complaint to clarify the basis of his claims and the jurisdiction over them. Plaintiff must provide the Court with sufficient information and in a coherent manner so that it can perform the review required under § 1915. The amended complaint must clearly state the legal theory or theories upon which Plaintiff seeks relief and whether he has exhausted his administrative remedies. Additionally, the amended complaint must clearly state the basis for the Court to exercise jurisdiction over Plaintiff's claims. Plaintiff should carefully consider

whether he can allege a claim in good faith because pursuing frivolous claims could lead to the imposition of sanctions.

Plaintiff is cautioned that, despite proceeding *pro se*, he is required to comply with this Court's Local Rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. Plaintiff may obtain a copy of the Local Rules from the Court's website (http://www.flmd.uscourts.gov) or by visiting the Office of the Clerk of Court. Additionally, resources and information related to proceeding in court without a lawyer, including a handbook entitled "Guide for Proceeding Without a Lawyer," can be located on the Court's website (http://www.flmd.uscourts.gov/pro_se/default.htm). Plaintiff should also consult the Middle District of Florida's Civil Discovery Handbook for a general discussion of this District's discovery practices (http://www.flmd.uscourts.gov/civil-discovery-handbook).

## IV.    CONCLUSION

Accordingly, Plaintiff's Motion to Proceed in Forma Pauperis (Doc. 2) is **TAKEN UNDER ADVISEMENT**. Plaintiff shall file an amended complaint on or before **October 8, 2025**. The amended complaint must comply with all pleading requirements contained in Rules 8, 9, 10, and 11 of the Federal Rules of Civil Procedure and those contained in the Local Rules of the Middle District of Florida. Failure to comply with this Order may result in a recommendation that this action be dismissed for failure to prosecute.

**DONE** and **ORDERED** in Ocala, Florida on September 10, 2025.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties